UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60734-CIV-COHN/SELTZER

CARMEN LOPEZ and DAWN SERRA,
and other similarly-situated individuals,

   Plaintiffs,

vs.

YVETTE PEREYRA ANS, M.D., P.A., a Florida
corporation, YVETTE PEREYRA ANS, an
individual,

   Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Defendants' Motion for Summary Judgment [DE 24]. The Court has considered the Motion, the parties' related submissions, the record in this case, and is otherwise advised in the premises.

### I. BACKGROUND

Plaintiffs bring this action to recover unpaid overtime wages under the Fair Labor Standards Act ("FLSA"). Defendant Yvette Pereyra, M.D., P.A. ("Office") is an obstetrics and gynecological doctor's office located in Hollywood, Florida. DE 24 at 1. Plaintiff Carmen Lopez was a medical assistant in the Office from October 31, 2006 through January 23, 2009. DE 38-1 ¶ 2. Plaintiff Dawn Serra was an administrative assistant in the Office from May 2, 2006 through May 1, 2009.

Plaintiffs allege that the Office meets the requirements of an enterprise under the FLSA and that each Plaintiff also qualifies for individual coverage because they

engaged in commerce. Therefore, Plaintiffs assert that the FLSA applies and supports their claims for unpaid overtime wages. Defendant moved for summary judgment arguing that the Office was not an enterprise as defined by the FLSA and Plaintiffs were not individually engaged in interstate commerce so as to trigger individual coverage.[1] In support of its Motion, Defendant submitted evidence including the Declaration of Yvette Pereyra Ans and the Office's tax returns for 2006, 2007 and 2008. In opposing the Motion, Plaintiffs submitted the Declarations of Carmen Lopez and Dawn Serra. Plaintiffs also rely on "trial balance sheets" which appear to be worksheets used in the preparation of the Office's tax returns.

1. **Declaration of Yvette Pereyra Ans**

In her Declaration, Defendant Yvette Pereyra Ans states that she is "licensed to practice medicine in the State of Florida" and that she is "not licensed in any other states, nor [does she] practice in any state other than Florida." DE 24-1 ¶ 3. Ms. Ans' Declaration also declares the following:

> My practice is an entirely local business, only transacting and seeking to transact business in South Florida, and does not engage in the production of goods for commerce. My practice purchases all of its equipment of supplies locally from vendors within Florida. My practice utilizes two laboratories, both of which are located within Florida.

Id. ¶ 4. Further, Ms. Ans states that her "patients are residents of Florida and [she]

---

[1] Defendants also argued that "Plaintiffs' constructive discharge" claims under the FLSA's retaliation provision fail as a matter of law. DE 24 at 12. Therefore, Defendants request that the Court "grant summary judgment in Defendants' favor for Counts V, VI, VII and VIII." DE 42 at 7. The Complaint on record in this action contains only two counts. See DE 1. In addition, Plaintiffs do not address Defendants' arguments regarding these additional counts. Accordingly, the Court will deny Defendants' Motion for Summary Judgment as moot in regards to such constructive discharge claims which are not a part of this action.

does not solicit business outside of Florida." Id. ¶ 5.

With respect to Plaintiff Carmen Lopez, Ms. Ans asserts that Ms. Lopez was a "medical assistant" and that her

> work-related duties consisted of greeting the patient and placing her in an exam room, taking a patient's blood pressure, preparing the exam room for the next patient, washing and sterilizing the instruments, drawing blood as needed, calling patients and informing them of laboratory results, preparing cultures and/or blood work to be picked up by the laboratory, and entering laboratory results in a patient's chart.

Id. ¶¶ 10-11.

With respect to Plaintiff Dawn Serra, Ms. Ans asserts that Ms. Serra was "a floater, working in the following areas, depending upon the needs of the office: front desk, check out, insurance, booking surgery and covering the back of the office." Id. ¶ 12. According to Ms. Ans, "Ms. Serra's work-related duties consisted of answering the telephone, calling patients, scheduling patients' appointments, greeting patients, receiving payment from the patients, filing insurance claims and ordering office supplies." Id. ¶ 14.

### 2.   The Declarations of Carmen Lopez and Dawn Sera

Both Declarations state the following:

> Many of Defendant Yvette Pereyra Ans' patients reside outside the state of Florida. Approximately five patients live in Santo Domingo. Many other patients live outside of Florida and saw Defendant Yvette Pereyra Ans while vacationing in Florida. Other patients became patients of Defendant Yvette Pereyra Ans while they lived in Florida, relocated to other states and remained patients.

DE 38-1 ¶ 4; DE 38-2 ¶ 4.

The Declaration of Carmen Lopez states that her "job duties" included "preparing blood and/or urine samples for the laboratory, administering medications on patients, . .

3

. and assisting Defendant Yvette Pereyra Ans, M.D. in medical procedures." DE 38-1 ¶ 3. Ms. Lopez declares that "[o]n a weekly basis I assisted patients from Santo Domingo and other states and made telephone calls to patients located in Santo Domingo and other states." Id. ¶ 4.

In addition, Ms. Lopez states that her job duties "regularly involved using the telephone to call businesses outside of Florida to order supplies, materials, medications, products, instruments and equipment from outside of Florida." Id. ¶ 5. Ms. Lopez claims that she "regularly used the telephone to call businesses to order from outside of Florida birth control medications for patients, birth control devices for patients and bladder control devices for patients. These items were shipped and manufactured from outside Florida to the office of Defendant Yvette Pereyra Ans, M.D., P.A. and were ultimately provided to the patients." Id. Further, Ms. Lopez attests that she used "the telephone weekly to call patient insurance companies outside of Florida to obtain authorization for medications that the insurance companies did not cover." Id. ¶ 6.

The Declaration of Dawn Serra states that her "job duties" included "verifying patient insurance coverage via telephone or internet, collecting patient consent forms, collecting money from patients, mailing out patient statement of accounts, making bank deposits of cash and payments to Defendant Yvette Pereyra Ans, M.D., P.A., mail billing forms to insurance companies and collections of bills from patients and insurance companies . . . ." DE 38-2 ¶ 3. Ms. Serra's Declaration further states that "[o]n a weekly basis I used the telephone to answer and make calls to schedule appointments and answer questions for patients who lived in Santo Domingo and other states. I also

4

collected payment from these patients." Id.

In addition, Ms. Serra's Declaration states that she "us[ed] the telephone and internet daily to verify patient insurance coverage with insurance companies outside of Florida." Id. ¶ 5. Ms. Serra claims that "Defendant Yvette Pereyra Ans, M.D., P.A. accepted insurance from approximately ten (10) insurance companies [that] were located outside of Florida." Id. The Declaration then sets forth a "non-exhaustive" list of out-of-state insurance companies that Ms. Serra called on a "regular and recurring basis." Id. Ms. Serra states that she "used to telephone these insurance companies outside of Florida to verify patient insurance coverage at least three (3) times each work day." Id. According to Ms. Serra, her job duties "each work day" also included (i) "mailing twelve (12) to twenty five (25) billing and other insurance forms to insurance companies outside of Florida;" id. ¶ 6, and (ii) "opening mail containing checks and other documents from insurance companies outside of Florida." Id. ¶ 7.

### 3.    Record Evidence Relating to Gross Revenue

Defendants submitted tax returns for the Office which indicate gross receipts or sales for the years of 2006, 2007 and 2008 as $410,554, $449,677 and $439,607, respectively. See DE's 24-3, 24-4 and 24-5. In addition, the Declaration of Yvette Pereyra Ans attests to the accuracy of these figures. DE 24-1 ¶¶ 15-17.

Plaintiffs submitted three "trial balance sheets" for the years 2006, 2007, and 2008. Plaintiffs argue that these trial balance sheets demonstrate that the tax returns filed by Defendant do not reflect full amount of several loans the Office made to Dr. Ans. See DE 48 at 2. Plaintiffs contend that if the full amount of these loans are included in the gross volume of sales or business for the Office, the resulting total

exceeds the $500,000 threshold for all relevant years.  See id. at 2-3.

## II. LEGAL STANDARD

The Court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "When deciding a motion for summary judgment, a district court must consider all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and must resolve all reasonable doubts against the moving party." Corbitt v. Home Depot U.S.A., 573 F.3d 1223, 1238 (11th Cir. 2009).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of Rule 56(e), the non-moving party "may not rely merely on allegations or denials in its own pleading," but instead must come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  "A mere 'scintilla' of

6

evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

### III. ANALYSIS

Congress passed the FLSA "to give specific minimum protections to individual workers and to ensure that each employee covered by the Act would receive a fair day's pay for a fair day's work and would be protected from the evil of overwork as well as underpay." Barrentine v. Arkansas-Best Freight Sys., 450 U.S. 728, 739 (1981) (internal quotation marks and citation omitted). In turn, courts construe the FLSA "liberally to apply to the furthest reaches consistent with congressional direction." Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 296 (1985) (citing Mitchell v. Lublin, McGaughy & Assocs., 358 U.S. 207, 211 (1959)).

To establish a claim for overtime compensation under the FLSA, Plaintiffs must show that either the Office is an enterprise engaged in commerce or in the production of goods for commerce (enterprise coverage), or that Plaintiffs themselves were engaged in commerce or in the production of goods for commerce (individual coverage). See 29 U.S.C. § 207(a)(1).[2] Plaintiffs claim that both enterprise and

---

[2] By statute, "commerce" is defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S .C. § 203(b). "Produced" means "produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this Act an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any

individual coverage apply, while Defendants argue that, as a matter of law, neither prong is met.

1. **Enterprise Coverage**

Pursuant to the FLSA, an enterprise "engaged in commerce or in the production of goods for commerce" is defined as a business that:

> (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

29 U.S.C. § 203(s)(1)(A).

As discussed, Defendants have submitted tax returns and the sworn testimony of Dr. Ans demonstrating that the gross sales or business of the Office was below $500,000 during the relevant years. "Recent decisions by district courts in this circuit have held that an enterprise's total gross volume sales or business done may be determined from its tax returns." Flores v. Nuvoc, Inc., 610 F. Supp. 2d 1349, 1355 (S.D. Fla. 2008) (citing Stout v. St. Amour's Lawn Care, LLC, 2008 WL 816818, at *2 (M.D. Fla., Mar. 25, 2008); Thompson v. Robinson, 2007 WL 2714091, at *4 (M.D. Fla. Sep. 17, 2007); Lopez v. Top Chef Investment, Inc., 2007 WL 4247646, at *3 (S.D. Fla. Nov. 30, 2007) (rejecting plaintiff's conclusory assertions that defendants had

---

closely related process or occupation directly essential to the production thereof, in any State." 29 U.S.C. § 203(j). "Goods" is defined as "goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer or processor thereof." 29 U.S.C. § 203(i).

understated their income on their federal tax returns and accepting the gross income figure on defendants' federal tax return in considering whether enterprise coverage existed)). Moreover, the Defendants argue that the loans to Dr. Ans are not a factor in determining the Office's gross receipts. DE 49 at 3. According to Defendants, "Plaintiffs provide no support for their assertion that Dr. Ans somehow withdrew money from the practice prior to reporting it as the gross income of the [Office]. Dr. Ans' salary and loans taken from the [Office] do not constitute gross revenue." Id. at 4.

The Court finds that Plaintiffs have failed to set forth evidence to support a finding that the Office qualifies as an enterprise under the FLSA. In 1966, Section 203 was amended to include "business done." The Supreme Court has stated, "the Senate Report in the 1966 amendments makes clear that the added language was intended to dispel any uncertainty that revenue derived from services, rentals or loans, even though perhaps not literally 'sales,' was nevertheless to be considered in measuring the dollar-volume limitation of § 3(a)." Falk v. Brennan, 414 U.S. 190, 198-99 (1973). Under this definition, the entire loan itself would not be included in the "business done" by an enterprise, instead only revenue derived from a loan would count. Here, there is no evidence in the record to support an inference that (i) the Office generated "revenue" from the loan that would cause its gross receipts to exceed $500,000, or (ii) that Dr. Ans was using the loans to divert money that would otherwise be included in the Office's gross receipts. Accordingly, the Court finds that enterprise coverage does not apply to this case.[3]

---

   [3]   Plaintiffs also rely on the "rolling quarter method." This method, however, "a regulatory tool to determine whether a defendant employer, <u>who once met the gross sales requirement in the previous year</u>, continues to be subject to enterprise coverage

9

## 2. Individual Coverage

For individual coverage to apply under FLSA, an employee must present evidence that he or she was (i) engaged in commerce or (ii) engaged in the production of goods for commerce. See Thorne v. All Restoration Services, Inc., 448 F .3d 1264, 1265-1266 (11th Cir. 2006).[4] The Eleventh Circuit found that to "engage in commerce," a plaintiff must "directly participat[e] in the actual movement of persons or things in interstate commerce." Thorne, 448 F.3d at 1266. When determining individual coverage, the character of the employee's activities is determinative, not the nature of the employer's business. Overstreet v. N. Shore Corp., 318 U.S. 494, 498 (1943).

A key factor in determining if a plaintiff engaged in commerce for purposes of individual coverage under the FLSA is whether such activities were a "regular and recurrent" part of the plaintiff's employment duties. 29 C.F.R. 776.10(b). The "employee's interstate activity must be regular and recurrent and not simply isolated or sporadic for jurisdiction to exist." Dent v. Giaimo, 606 F. Supp. 2d 1357, 1360 (S.D. Fla. 2009) (citing Scott v. K.W. Max Investments, Inc., 256 Fed. App'x 244, 247 (11th

---

in the following year." Exime v. E.W. Ventures, Inc., 591 F. Supp. 2d 1364, 1375 (S.D. Fla. 2008) (emphasis in original) (citing Donovan v. I-20 Motels, Inc., 664 F.2d 957, 958 (5th Cir. 1981)). Accordingly, the "rolling quarter method" is inapplicable to this case.

[4] The Department of Labor takes the position that the "[s]hipment of goods from another State direct to a customer located in the same State as the distributor who ordered the shipment, constitutes interstate commerce by virtue of which [ ] the distributor's employees who procured the shipment . . . are covered by the FLSA as being engaged in interstate commerce." Field Operations Handbook (FOH), Wage and Hour Division, U.S. Dep't of Labor, § 11i15 (1994). Although not entitled to Chevron deference, the Department of Labor's Field Operations Handbook has been held to be persuasive and entitled to some weight in judicial interpretations of the FLSA. See Martin v. Occupational Safety and Health Review Comm'n, 499 U.S. 144, 157 (1991); Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1275 (11th Cir. 2008).

Cir. 2007)); see also <u>Curry v. High Springs Family Practice and Diagnosis Center, Inc.</u>, 2009 WL 3163221 (N.D. Fla. Sept. 30, 2009) (granting summary judgment on FLSA claim by doctor's assistant who performed primarily administrative functions and had only sporadic contact with out-of-state insurers).

The Court finds that there is a factual dispute regarding whether individual coverage applies to each Plaintiff.  Defendants rely heavily on the <u>Dent</u> case where the court found no individual coverage for a medical assistant working in a local doctor's office.  Judge Ryskamp's decision in <u>Dent</u> presents a similar, though distinguishable, factual scenario.  <u>Dent</u> can be distinguished on two grounds, which ultimately require a different result.

First, Judge Ryskamp found that "although some patients may have been residents of other states, defendant was not engaged in interstate commerce if his contact with those patients was primarily local." <u>Dent</u>, 606 F. Supp. 2d at 1361.  In <u>Dent</u>, "there [was] no evidence to suggest that defendant solicited business from patients while they were out of state or that any contract with out of state patients was regular or recurrent." <u>Id.</u>  Conversely, the Declaration of Carmen Lopez states that "[o]n a weekly basis I . . . made telephone calls to patients located in Santo Domingo and other states."  DE 38-1 ¶ 4.

Second, in <u>Dent</u>, "although the plaintiff averred that her job duties <u>included</u> contacting out of state insurance companies she did not allege how much of her time was spent conducting these activities."  606 F. Supp. 2d at 1361 (emphasis in original).  Therefore, the court reasoned that "[i]t could be that [other individuals in the office] conducted the majority of those activities and that plaintiff only occasionally contacted

11

out of state insurance companies." Id. Here, the Declaration of Dawn Serra states that she "used to telephone [ ] insurance companies outside of Florida to verify patient insurance coverage at least three (3) times each work day." DE 38-2 ¶ 5. Further, Ms. Serra declares that her job duties "each work day" also included (i) "mailing twelve (12) to twenty five (25) billing and other insurance forms to insurance companies outside of Florida;" id. ¶ 6, and (ii) "opening mail containing checks and other documents from insurance companies outside of Florida." Id. ¶ 7.

In addition, Defendants rely on Thorne to argue that "[w]ith respect to the supplies and equipment used by the [Office], Plaintiffs do not allege that the [Office] engaged in the sale of goods that came from other states." DE 42 at 5. "Plaintiffs' 'activities were not rendered interstate commerce simply because [the Office], an ultimate consumer, purchased goods which had previously moved in interstate commerce.'" Id. (quoting Thorne, 448 F.3d at 1267). This argument holds true with respect to medical supplies used by the Office such as syringes, latex gloves and surgical sutures. The same cannot be said with respect to products and medications for which the Office's patients were the ultimate consumer. In this regard, Ms. Lopez states that she "regularly used the telephone to call businesses to order from outside of Florida birth control medications for patients, birth control devices for patients and bladder control devices for patients." Id. ¶ 5. Ms. Lopez also attests that she used "the telephone weekly to call patient insurance companies outside of Florida to obtain authorization for medications that the insurance companies did not cover." Id. ¶ 6.

Finally, Defendants argue that Plaintiffs' Declarations are vague and rely on words such as "regularly." Defendants claim that such statements are conclusory and

12

fail to "state the frequency with any particularity." DE 42 at 4. Defendants claim is not entirely accurate as each Declaration does contain certain specific statements regarding the frequency of employment activities. Moreover, Defendant has not provided the Court with any telephone records, invoices or patient information that would enable this Court to conclude that Plaintiffs did not engage in commerce on a "regular and recurrent" basis. Cf. Curry v. High Springs Family Practice and Diagnosis Center, Inc., 2009 WL 3163221 (N.D. Fla. Sept. 30, 2009).

In Curry, the plaintiff relied on an affidavit describing the number of times she communicated with out-of-state insurers. Id. at *1. "In response, Defendants provided detailed billing records for all phone and facsimile lines at the walk-in-clinic from the relevant time period." Id. Based on this evidence, the Court granted summary judgment in favor of defendants finding that plaintiff's contact with out-of-state insurers was sporadic at best. Id. at *4. In this case, the parties have relied solely on conflicting declarations and, therefore, the Court can only decide this issue by making credibility determinations. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions . . . ." Anderson, 477 U.S. at 255. Therefore, whether each Plaintiff qualifies for individual coverage is factually in dispute and must be decided by the trier of fact. Accordingly, Defendant's Motion for Summary Judgment will be denied on the issue of individual coverage.

## IV.  CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion for Summary Judgment [DE 24] is **GRANTED in part and DENIED in part**.

13

      a.      Defendants' Motion is granted on the issue of whether enterprise coverage applies.

      b.      Defendants' Motion is denied on the issue of whether indvidual coverage applies.

      c.      Defendants' Motion is denied as moot on Plaintiffs' purported claims of constructive discharge.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 29th day of January, 2010.

/s/ James I. Cohn
JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record via CM/ECF